United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  JOSE CASTANON,                          Case No. 5:12-CV-04487-LHK

13            Plaintiff,                     ORDER DENYING PLAINTIFF'S MOTION
                                             FOR SUMMARY JUDGMENT; AND
14       v.                                  GRANTING DEFENDANT'S CROSS-
                                             MOTION FOR SUMMARY JUDGMENT
15  CAROLYN W. COLVIN,[1] Acting
    Commissioner, Social Security Administration,   [Re: ECF Nos. 19, 21]
16
            Defendant.
17

18

19          Plaintiff  Jose Castanon ("Castanon") appeals a final decision of the Commissioner of Social

20  Security denying his application for a period of disability and disability insurance benefits under

21  Title II of the Social Security Act.  Before the Court are the parties' cross-motions for summary

22  judgment, which have been fully briefed.  *See* ECF Nos. 19, 21, 22.  Upon consideration of the

23  briefing[2] and for the reasons set forth below, the Court DENIES Castanon's motion and GRANTS

24  the Commissioner's motion.

25

26  _____

27  [1] Carolyn W. Colvin, the Acting Commissioner of Social Security, is substituted as the defendant in
    this action in place of her predecessor, Michael J. Astrue.  *See* Fed. R. Civ. P. 25(d).

28  [2] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

United States District Court
For the Northern District of California

# I. BACKGROUND

Castanon was born in Mexico on December 7, 1966; he spent his childhood there before moving to the United States in 1982.  Admin. R. ("AR") 91, 865.  He has past relevant work as a sheet metal worker, spray painter, and construction worker.  AR 103-11, 903.  On April 2, 2009, he filed an application for a period of disability and disability insurance benefits with a protective filing date of March 17, 2009.[3]  AR 71-73A, 91.  He claimed disability as of April 4, 2006,[4] at the age of thirty-nine, following a work-related injury in which his left palm was punctured by a nail gun.[5]  AR 91, 894.  Specifically, he claimed that he suffered from reflex sympathetic dystrophy,[6] high blood pressure, and depression; he also indicated an inability to use his left hand following surgery on that hand.  AR 47, 113.

Castanon's application was denied initially and upon reconsideration.  AR 47, 53.  An Administrative Law Judge ("ALJ") conducted a hearing on January 11, 2011.  AR 19, 862-914.  On May 9, 2011, the ALJ issued a written decision concluding that Castanon was not disabled and thus was not entitled to benefits.  AR 19-36.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  AR 7.  Castanon now seeks judicial review of the denial of benefits.

[3] To qualify as an effective claim, an application for disability insurance benefits must be submitted on a prescribed form.  20 C.F.R. § 404.610.  However, a written statement indicating an intent to claim benefits may establish a protective filing date if it meets certain requirements.  20 C.F.R. § 404.630.  The protective filing date is used as the effective date of the application.  *Id.*

[4] A claimant who demonstrates disability may receive benefits for up to twelve months immediately preceding the month in which the application for benefits was filed.  20 C.F.R. § 404.621(a)(1).  Thus although Castanon claimed disability commencing in April 2006, at most he could have received benefits commencing in March 2008 (twelve months prior to the effective date of his application).

[5] The record actually contains several different explanations for the injury.  Treatment notes from April 20, 2006 indicate that Castanon put a drill through his left palm.  AR 217.  Notes from a psychiatric examination conducted on February 6, 2010 state that his left hand was punctured by a malfunctioning piston.  AR 537.  A medical report dated May 17, 2007 states that the injury was caused by a device used to break up concrete (a "concrete gun").  AR 598.  At the hearing, Castanon testified that the injury was caused by a nail gun.  AR 894.

[6] Reflex sympathetic dystrophy is as "a painful disorder that usually follows a localized injury, that is marked by burning pain, swelling, and motor and sensory disturbances especially of an extremity, and that is often considered a type of complex regional pain syndrome in which peripheral nerve injury has not been identified."  *See* Merriam-Webster Online Dictionary, http://www.merriam-webster.com/medical/reflex+sympathetic+dystrophy?show=0&t=1395169276 (last visited March 18, 2014).

5:12-CV-04487-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SJ AND GRANTING DEFENDANT'S CROSS MOTION FOR SJ

United States District Court
For the Northern District of California

# I. LEGAL STANDARD

## A.     Standard of Review

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

## B.     Standard for Determining Disability

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

"ALJs are to apply a five-step sequential review process in determining whether a claimant qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled; if so, the analysis proceeds to step three. *Id.* At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals an

5:12-CV-04487-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SJ AND GRANTING DEFENDANT'S CROSS MOTION FOR SJ

impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, subpt. P, app. 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is disabled; if not, the analysis proceeds to step four.  *Id.*  At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to do his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled; if not, the analysis proceeds to step five.  *Id.*  At step five, the ALJ determines whether the claimant can do other jobs in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  If so, the claimant is not disabled; if not, the claimant is disabled.  *Id.*  "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five."  *Bray,* 554 F.3d at 1222.

### III. DISCUSSION

The ALJ determined that Castanon's earnings records showed that he had acquired sufficient quarters of coverage to remain insured through December 31, 2011.  AR 19.  At step one, the ALJ found that Castanon had not performed substantial gainful activity since his alleged onset date of April 4, 2006.  AR 21.  At step two, the ALJ found that Castanon had a severe combination of impairments consisting of "[s]tatus post trauma injury to the left hand; status post carpal tunnel release of the left hand; and myofascial pain in the left upper extremity"; however, the ALJ found that Castanon's claimed mental impairment of adjustment disorder with depressed and anxious mood caused only minimal limitation and thus was non-severe.  *Id.*  At step three, the ALJ concluded that Castanon's impairments did not meet or medically equal an impairment in the Listing.  AR 23.  At step four, the ALJ determined that Castanon could not perform his past relevant work.  AR 34.

The ALJ found that Castanon has the RFC to perform light work with the restriction that "[t]he claimant is limited to using the left arm as an assist to the right upper extremity.  The left arm can be used as an assist one third of the time."  AR 23.  The ALJ found no limitation with respect to Castanon's dominant right upper extremity.  *Id.*  Based upon this RFC and the testimony of a vocational expert, the ALJ concluded at step five that Castanon could do jobs that existed in significant numbers in the national economy.  AR 35.  Castanon challenges the ALJ's step five determination, asserting that the ALJ erred by: failing to give sufficient weight to the opinions of his treating physicians; failing to consider his mental limitation of depression when determining his

1   RFC; and making unsupported factual findings regarding his education.

2   **A.    Medical Evidence**

3         When evaluating medical evidence, an ALJ must give a treating physician's opinion

4   "substantial weight." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

5   "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present

6   'specific and legitimate reasons' for discounting the treating physician's opinion, supported by

7   substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  When a

8   treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear

9   and convincing" reasons for disbelieving the treating physician.  *Id.* at 1228 n.8.

10         With respect to Castanon's physical limitations, the ALJ gave significant weight to the

11   opinion of consulting physician Woodrow Janese, M.D. and less weight to the opinions of treating

12   physician Hessam Noralahi, M.D. and examining physicians Allen Kaisler-Meza, M.D. and Jaehoon

13   Chung, M.D.  AR 23-31.  With respect to Castanon's mental limitations, the ALJ gave significant

14   weight to the opinion of examining psychiatrist Antoinette Acenas, M.D. and less weight to the

15   opinion of treating psychiatrist Tahami, D.O.  AR 31-34.  Because the ALJ relied upon other

16   physicians' opinions as bases for discounting the treating physicians' opinions, the ALJ need only

17   articulate "specific and legitimate" reasons for doing so, supported by substantial evidence.  *See*

18   *Bray*, 554 F.3d at 1228.

19         The record evidence regarding Castanon's limitations is summarized below:

20         **1.    Physical Limitations**

21               **a.    Eric Chan, M.D. (Treating Physician)**

22         Castanon saw Dr. Eric Chan in April 2006 following his initial emergency room visit on the

23   date of the injury to his left hand.  AR 214.  Dr. Chan diagnosed possible injury to the left carpal

24   tunnel with possible median nerve and flexor tendon injuries.  *Id.*  He recommended surgery.  *Id.*

25   During the surgery, which was performed on April 20, 2006, Dr. Chan found that the median nerve

26   and flexor tendon were intact; the tendon sheath and synovium were thickened and swollen and

27   were repaired; and a moderate size hematoma was removed.  AR 215.

28

*United States District Court*
For the Northern District of California

5:12-CV-04487-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SJ AND GRANTING DEFENDANT'S CROSS MOTION FOR SJ

**United States District Court**
For the Northern District of California

1    **b.    Michael Butcher, M.D. (Treating Physician)**

2    Castanon saw Dr. Michael Butcher, an orthopaedic surgeon, for follow-up on July 11, 2006.

3    Dr. Butcher prepared a report dated July 12, 2006, in which he diagnosed Castanon with reflex

4    sympathetic dystrophy ("RSD") and recommended immediate pain management including possible

5    sympathetic nerve blocks, as well as physical therapy.  AR 238-39.  Dr. Butcher prepared an

6    additional report dated July 13, 2006, noting that he had received a report from Dr. Allen Kaisler-

7    Meza, who also believed that Castanon had RSD.  AR 236.  Dr. Butcher saw Castanon again on July

8    17, 2006, and noted that he appeared much more comfortable since he had started taking prescribed

9    medication.  AR 234.  Dr. Butcher recommended sympathetic nerve block injections and prescribed

10   further physical therapy.  *Id.*  Dr. Butcher opined that Castanon could not do his job and that he

11   should be on temporary total disability.  *Id.*  Dr. Butcher saw Castanon again on July 31, 2006.

12   Although Castanon "was adamant about being unable to drive and perform any work involving the

13   left upper extremity," Dr. Butcher noted that electrodiagnostic tests were negative, recommended

14   that Castanon use his left hand as much as possible, and recommended that he return to modified

15   work.  AR 230.

16   **c.    Hessam Noralahi, M.D. (Treating Physician)**

17   Castanon was seen by Dr. Hessam Noralahi, an industrial disability evaluator, on August 22,

18   2006.  AR 247-51.  It appears that this visit was scheduled in connection with a worker's

19   compensation claim, as Dr. Noralahi's report of the same date refers to a claims adjuster and

20   contains a notation that it was copied to an attorney.[7]  AR 250-51.  Dr. Noralahi noted that Castanon

21   had been prescribed a cervical ganglion nerve block, but had "decided against the aggressive

22   measure and preferred to be treated conservatively with use of medication."  AR 248.  Castanon

23   reported pain in his left hand that radiated up his arm to the shoulder and neck area, difficulty

24   flexing his finger, and a grip too weak to lift a cup of tea.  *Id.*  Dr. Noralahi concluded that

25   Castanon's temporary total disability should be extended for four weeks to allow for review of his

26   records and formulation of a treatment plan.  AR 250.

27   Dr. Noralahi and other doctors from Dr. Noralahi's office prepared reports periodically

28   

---

[7] The ALJ's decision indicates that Castanon was pursuing a worker's compensation claim.  AR 25.

5:12-CV-04487-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SJ AND GRANTING DEFENDANT'S CROSS MOTION FOR SJ

throughout 2006, 2007, and 2008.  A report dated May 16, 2007 stated that Castanon's symptoms seemed to be "reasonably controlled with medications," that the option of nerve blocks had been refused because Castanon felt the medications were controlling his symptoms, and that Castanon had been referred to Dr. Hosein Tahami for psychiatric issues.  AR 280.  A report dated May 17, 2007 indicated that Castanon had reported depression; depression screening by Dr. Tahami was recommended again.  AR 278.  A report dated September 12, 2007 noted that medication was effective in controlling some of Castanon's symptoms and that Castanon continued to refuse recommended ganglion nerve block.  AR 272.  A report dated January 21, 2008 indicated that Castanon had not followed up with Dr. Tahami.  AR 264.  A report dated February 20, 2008 noted that medication was effective in decreasing Castanon's symptoms and again stated that he should see Dr. Tahami for psychiatric treatment.  AR 260.

On May 18, 2010, Dr. Noralahi submitted a RSD medical assessment form, opining that Castanon's condition would cause occasional interference with attention and concentration and that Castanon would be unable to perform routine repetitive tasks at a consistent pace, perform detailed or complicated tasks, meet strict deadlines, perform fast paced tasks, work near hazards such as heights or moving machinery, or do any lifting, pushing, pulling or repeated wrist movements.  AR 552.  Dr. Noralahi also opined that Castanon would need to take six ten-minute breaks each workday.  AR 553.

### d.    Allen Kaisler-Meza, M.D. (Examining Physician)

Castanon saw Dr. Allen Kaisler-Meza, M.D. for agreed medical examinations on a number of occasions, which were summarized in reports dated May 15, 2007 and May 11,2009.  AR 597-606, 682-92.  Dr. Kaisler-Meza noted Castanon's reports of pain and weakness.  AR 600, 686. After lengthy examinations, Dr. Kaisler-Meza diagnosed Castanon with complex regional pain syndrome("CRPS") and RSD caused by the puncture to his palm and resulting surgery, and recommended a ganglion block.  AR 604-05, 688.  He opined that Castanon was temporarily totally disabled, but it is not clear whether Dr. Kaisler-Meza meant disabled only from his past work or from any work.  AR 605, 691.

On October 11, 2009, Dr. Kaisler-Meza prepared a supplemental report after viewing

7

1  surveillance videos of Castanon; the videos are discussed below.  AR 663-67.  Dr. Kaisler-Meza

2  described the videos as showing Castanon "employing his left hand freely and lifting, pulling,

3  handling beyond his description of his abilities to me."  AR 666.  Dr. Kaisler-Meza stated that there

4  was a discrepancy between the activities he viewed on the videos and Castanon's prior

5  representations of "complete disuse of his left hand."  *Id.*

6        On February 3, 2010, Dr. Kaisler-Meza prepared an agreed medical reevaluation.  AR 654-

7  657.  In that report, Dr. Kaisler-Meza stated that he viewed the surveillance footage a second time

8  with Castanon and his wife.  AR 655.  Dr. Kaisler-Meza concluded that he had been mistaken when

9  he viewed the footage the first time, and that many instances in which he believed Castanon to be

10  using his left hand and arm actually showed Castanon using his right hand and arm.  *Id.*  After

11  observing the footage closely, Dr. Kaisler-Meza determined that Castanon did use his left hand but

12  only for "simple, non-forceful, and nonrepetitive activities," and that the hand was in a semi-claw

13  position.  AR 655-56.  Dr. Kaisler-Meza stated that these activities did not contradict Castanon's

14  self-reported limitations and reverted to his earlier opinion as stated in his May 11, 2009 report.  AR

15  656.

16              **e.**    **Jaehoon Chung, M.D. (Examining Physician)**

17        Castanon underwent an internal medical evaluation by Dr. Jaehoon Chung on February 13,

18  2010.  AR 543-546.  Dr. Chung's diagnoses were "status post trauma/injury to the left hand and

19  status post surgical repair"; "Status post post-surgical RSD/CRPS-1"; and "Myofascial pain, left

20  upper extremity referred from the left hand."  AR 545.  He concluded that Castanon could not hold

21  anything with the left hand, and could not reach, handle, finger, or feel with the left hand.  AR 546.

22              **f.**    **C. Fracchia, M.D. (Consulting Physician)**

23        Dr. C. Fracchia, a medical consultant, prepared a physical RFC assessment on August 4,

24  2009.  Dr. Fracchia concluded that Castanon had significant limitations with respect to his left upper

25  extremity: lifting twenty pounds occasionally and ten pounds frequently; pushing and pulling

26  occasionally; crawling occasionally; balancing never; and reaching, handling, fingering, and feeling

27  occasionally.  AR 506-07.

28

**United States District Court**
For the Northern District of California

1

          **g.**       **Woodrow Janese, M.D. (Consulting Physician)**

2

     Dr. Woodrow Janese, a neurologist and neurosurgeon, testified at the administrative hearing

3

as an impartial medical expert. AR 867-68. Dr. Janese had reviewed the medical evidence of

4

record. *Id.* Dr. Janese opined that Castanon had suffered a puncture wound to his palm that had

5

healed and resolved. AR 874. Dr. Janese found no objective basis to support a diagnosis of CRPS[8]

6

or other ongoing disorder. AR 874, 878. Dr. Janese stated that generally CRPS or RSD would

7

occur only upon a serious injury such as a bullet wound or a crushed arm as a result of something

8

like a mining accident or railroad accident. AR 878. Noting that Castanon's EMG and MRI were

9

normal, that there was no evidence of nerve damage, and that Castanon is seen on the surveillance

10

video using his hand normally, Dr. Janese opined that Castanon was either feigning injury or was

11

suffering from a neurosis or psychosis that led him to believe he was having hand pain. AR 882.

12

          **h.**       **Castanon's Testimony**

13

     Castanon testified through an interpreter; he stated that he did not speak English at all, that

14

he had grown up in Mexico, that he had never learned English, and that he had been able to speak

15

Spanish at all his jobs in the United States. AR 865-66. He also stated that he completed the eighth

16

grade in Mexico. AR 898-99. Castanon testified that his injury occurred when he was using a

17

"viper nail gun," and that "the piston went inside" his hand. AR 894. He had carpal tunnel surgery

18

to address the puncture wound. *Id.* He said that he takes pain medicine but it makes him feel dizzy,

19

tired, and "without will." AR 895. He claimed that physical therapy and acupuncture had not

20

helped his pain or lack of function. *Id.* He stated that he cannot close his hand into a fist. AR 896.

21

When asked about the surveillance video, Castanon stated that he was using his right hand

22

throughout the footage, and that others erroneously had said he was using his left hand. *Id.* He also

23

described his depression following his accident, and said that he was unable to concentrate because

24

of the pain, and was unable to sleep. AR 897-98.

25

          **i.**       **Diagnostic Testing**

26

     An EMG/nerve conduction study dated July 21, 2006 was normal. AR 228-29. An MRI

27

---

28

[8] Dr. Janese appears to use the term "chronic regional pain syndrome" or "CRPS" interchangeably with "reflux sympathetic dystrophy" or "RSD." AR 878.

5:12-CV-04487-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SJ AND GRANTING DEFENDANT'S CROSS MOTION FOR SJ

United States District Court
For the Northern District of California

1    taken on December 27, 2007 was normal.  AR 377.  An x-ray taken February 5, 2008 was normal.

2    AR 373.

3             **j.      Surveillance Video**

4             Surveillance video was taken of Castanon in connection with his worker's compensation

5    claim.  AR Ex. 19E.[9]  The footage, which was taken on several different dates throughout 2008 and

6    early 2009, shows Castanon using his left hand for a number of activities, including holding keys,

7    closing vehicle doors, turning the steering wheel while driving, carrying bulky items, and pulling up

8    his pants.  *Id.*  The ALJ's decision lists forty-two instances of Castanon using his left hand and/or

9    arm, noting the exact time and date of each instance.  AR 26-27.  The Court has reviewed the DVD

10   of the video footage, and concludes that the ALJ's decision fairly describes Castanon's activities as

11   shown in the footage.

12           **2.      Mental Limitations**

13           **a.      Dr. Hosein Tahami, D.O. (Treating Physician)**

14           Dr. Hosein Tahami saw Castanon for a psychiatric evaluation on June 5, 2007.  AR 587.  Dr.

15   Tahami noted that Castanon did not appear to be in acute distress and was able to complete a

16   lengthy evaluation.  *Id.*  Castanon reported feeling sad, anxious, and irritable.  AR 589.  He reported

17   finishing the twelfth grade.  AR 590.  Dr. Tahami observed Castanon to be pleasant and cooperative;

18   oriented as to time, place, person, and situation; and to have no significant impairment of short-term

19   or long-term memory.  AR 590-91.  Dr. Tahami's diagnosis was adjustment disorder with depressed

20   and anxious mood, with notations of chronic pain and discomfort, physical limitations, and financial

21   difficulties.  AR 591.  Dr. Tahami prescribed antidepressant medication and group therapy.  AR

22   592.

23           Dr. Tahami saw Castanon for routine follow-ups for the next several years.  In reports dated

24   June 12, 2007, July 3, 2007, July 31, 2007, August 14, 2007, September 4, 2007, September 18,

25   2007, October 23, 2007, November 27, 2007, February 5, 2008, March 11, 2008, April 10, 2008,

26   May 8, 2008, July 8, 2008, and August 5, 2008, Dr. Tahami reported slow improvement to

27   _____

28   [9] A DVD containing the surveillance footage is clipped to the front of and made part of the
     administrative record in this case.

5:12-CV-04487-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SJ AND GRANTING DEFENDANT'S CROSS MOTION FOR SJ

1  Castanon's mood.  AR 408-425, 445-451, 460-62, 472-74, 484-86, 576-92.  In several reports, Dr.

2  Tahami noted that Castanon had said that his medications "helped significantly."  *See, e.g.*, AR 416,

3  423.  In reports dated March 27, 2009, May 8, 2009, June 5, 2009, August 14, 2009, October 30,

4  2009, March 4, 2010, May 7, 2010, and July 20, 2010, Dr. Tahami noted Castanon's frustration with

5  his worker's compensation case and Social Security application.  AR 634, 641-42, 648-49, 660-61,

6  673-74, 694, 698.  All of the reports noted normal memory, thought process, and thought content.

7  *Id.*

8  **b.    Ann Allen, M.D. (Examining Physician)**

9  Dr. Ann Allen completed an agreed medical evaluation of Castanon on October 10, 2007, an

10 agreed supplemental report on February 25, 2008, an agreed medical reevaluation on April 14, 2008,

11 and an agreed supplemental report on May 13, 2008.[10]  AR 420-22, 433-444, 452-54, 492-503.  Dr.

12 Allen initially diagnosed Castanon with adjustment disorder with depressed mood; she found no

13 impairment to his activities of daily living, and mild to moderate impairment in areas of social

14 abilities and work.  AR 502.  In February 2008, Dr. Allen concluded that Castanon did not seem to

15 have any significant improvement of his symptoms, and that his psychiatric issues flowed from his

16 physical ones.  AR 453.  In April 2008, Dr. Allen noted that Castanon reported increased depression

17 and anxiety, but concluded that he likely was exaggerating.  AR 437.  She concluded that Castanon

18 should see Dr. Tahami for ten to twelve further visits to stabilize his improvement from medications

19 and then should stop psychological treatment.  AR 442.  In May 2008, Dr. Allen concluded that

20 based on Dr. Tahami's notes, Castanon appeared to be improving.  AR 421.  She opined that further

21 psychiatric treatment was not warranted, other than some further visits to stabilize his degree of

22 improvement.  *Id.*

23 **c.    Jonathan Dunn, Ph.D. (Examining Physician)**

24 On April 15, 2008, Dr. Jonathan Dunn completed a psychological assessment of Castanon.

25 AR 426-432.  Dr. Dunn found that at face value Castanon's responses indicated psychological

26 distress, conflicts, and problems.  AR 431.  However, Dr. Dunn concluded that Castanon's results

27 showed that he might be exaggerating.  *Id.*

28 _____

[10] These agreed medical evaluations were performed by Dr. Allen pursuant to Title 8, California
Code of Regulations, section 9795 in connection with Castanon's worker's compensation claim.

5:12-CV-04487-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SJ AND GRANTING DEFENDANT'S CROSS MOTION FOR SJ

**d.      Antoinette Acenas, M.D. (Examining Physician)**

On February 6, 2010, Dr. Antoinette Acenas conducted a psychiatric evaluation of Castanon. AR 537-540.  Dr. Acenas indicated that Castanon had been born in Mexico, had immigrated to the United States at the age of seventeen,[11] had finished high school, and was married with six children. AR 538.  She observed that he was well groomed, was coherent, and had spontaneous speech.  *Id.* He reported that he is able to perform his own personal hygiene and socialize with friends.  *Id.*  She concluded that any psychiatric impairment was the result of his physical condition and that he was receiving appropriate psychiatric treatment.  AR 539.  She opined that based only on his mental capabilities, he would be able to perform simple and repetitive tasks, accept instructions, perform work on a consistent basis, maintain regular attendance, finish a normal work week, and deal with normal workplace stress.  AR 539-40.

**B.      ALJ's Evaluation of the Evidence**

**1.      RFC**

The ALJ considered all of the above evidence in concluding that Castanon has the RFC to perform light work with the specified restriction that "[t]he claimant is limited to using the left arm as an assist to the right upper extremity.  The left arm can be used as an assist one third of the time." AR 23.

With respect to Castanon's physical limitations, the ALJ gave significant weight to the opinion of consulting physician Dr. Janese because the ALJ believed that Dr. Janese's opinion was the most consistent with the record as a whole.  AR 29-30.  Dr. Janese summarized the diagnostic testing, which did not reveal any nerve damage or other damage that would explain the extent of Castanon's claimed symptoms.  AR 29.  Dr. Janese opined that Dr. Noralahi's assessment, which was based in part upon Castanon's self-reporting, was not reliable given the surveillance video showing Castanon using his left hand repeatedly.  AR 30.  Dr. Janese also found persuasive the psychiatric evaluations that concluded that Castanon might be exaggerating.  *Id.*  However, while Dr. Janese opined that Castanon was capable of the full range of medium work with no limitation on

---

[11] Castanon testified that he first moved to the United States in 1982, moved back to Mexico, and then moved to the United States a second time.  AR 865.  It is unclear from the record whether his statements to Dr. Acenas referred to the 1982 move or the subsequent move.

12

1  the left extremity, the ALJ concluded that more restrictive limitations were appropriate given

2  evidence that Castanon had some continuing impairment post injury and post surgery.  *Id.*

3       The ALJ noted the discrepancies between Dr. Kaisler-Meza's initial conclusion that

4  Castanon was severely impaired, then subsequent conclusion that the surveillance footage was

5  inconsistent with Castanon's self-reported severe impairment, and then final conclusion that the

6  surveillance footage was not inconsistent with the initial conclusion.  AR 28.  The ALJ credited the

7  conclusion that the surveillance footage was inconsistent with Castanon's self-reports based upon

8  the ALJ's own multiple viewings of the video footage.  AR 26-28.  As is discussed above, the ALJ's

9  decision contains a meticulous list of forty-two instances in which the surveillance video shows

10  Castanon using his left hand and/or arm.  AR 26-27.

11       The ALJ also concluded that treating physician Dr. Noralahi's RSD assessment form, which

12  indicated significant limitations on work, was inconsistent with Dr. Noralahi's numerous status

13  reports noting improvement to Castanon's mood, efficacy of his medications, and ability to return to

14  modified work.  AR 29.

15       The ALJ gave little weight to the opinions of examining physicians Dr. Chung and Dr.

16  Fracchia on the ground that those opinions appeared to be based primarily upon Castanon's

17  subjective complaints, which the ALJ found not credible as discussed above.  AR 28-30.  The ALJ

18  concluded that the opinions were not consistent with the record as a whole.  *Id.*

19       After considering all of the evidence presented, including the normal EMG study, normal x-

20  ray, and normal MRI noted above in Section III.A.1.i., the surveillance video, and the full medical

21  record, the ALJ found Castanon's "subjective allegations to be exaggerated and not supported by the

22  record." AR 30.

23       With respect to Castanon's mental limitations, the ALJ gave significant weight to examining

24  physician Dr. Acenas's opinion because it was consistent with the record as a whole.  AR 33.  The

25  ALJ gave less weight to Dr. Tahami's opinions, which were based in large part on Castanon's

26  subjective complaints, which the ALJ found not credible as discussed above.  AR 33.  The ALJ

27  noted that Dr. Tahami consistently had found Castanon's mental status to be normal, and his mood

28  to be improving once he was on appropriate medication.  *Id.*  The ALJ also noted the opinions of Dr.

13

Allen and Dr. Dunn that Castanon likely was exaggerating his symptoms.  AR 31.  Based upon all of the evidence in the record, the ALJ concluded that although Castanon reasonably could be expected to have some depression based upon his physical symptoms, there was insufficient evidence from which the ALJ could credit the reported intensity, persistence, and limiting effects of the depression.  AR 34.

The Court concludes that the ALJ articulated "specific and legitimate" reasons, supported by substantial evidence in the record, for the weights that he assigned to the opinions of the treating, examining, and consulting physicians in this case.  The Court likewise concludes that the ALJ's RFC determination is supported by substantial evidence in the record, including the physicians' opinions discussed above, the diagnostic tests, and the surveillance video.  Castanon argues that Dr. Janese's testimony contained a number of errors that undermine the ALJ's reliance upon Dr. Janese's opinion.  However, the asserted errors either are irrelevant to the ALJ's decision or do not undermine it.  For example, Castanon argues that Dr. Janese erred when he testified that certain handwritten treatment notes indicated "no complaints" when actually the symbols used on the notes indicated "no change."  Pl.'s Br. at 9, ECF No. 19.  However, the ALJ did not rely on that portion of Dr. Janese's testimony.  Castanon also points out that Dr. Janese erred in testifying that Castanon had a "fake-bad" during psychological testing.  *Id.* at 10.  What Dr. Dunn actually said was that although Castanon's responses were not totally invalid because of a "fake-bad" negative response bias, Castanon's responses did suggest intentional or unintentional exaggeration.  AR 427.  Thus although Dr. Janese misspoke at the hearing, the gist of his testimony – that Castanon's responses may have been exaggerated – was supported.

Castanon also argues that the ALJ erred in failing to credit Dr. Tahami's reports, and in particular Dr. Tahami's conclusions that Castanon showed no signs of embellishment, exaggeration, or malingering.  Pl.'s Br. at 15, ECF No. 19.  The ALJ explained that he chose not to credit Dr. Tahami's opinions because they were based upon Castanon's subjective pain complaints, which the ALJ found not credible.  AR 33.

### 2.    Vocational Expert

The ALJ posed a number of hypotheticals to Ronald Morrell, a vocational expert ("VE")

United States District Court
For the Northern District of California

1  who testified at the hearing.   As most relevant here, the ALJ asked whether there would be jobs in

2  the national economy for an individual who is less than fifty years old, who has a high school

3  diploma, who does not speak English, who has prior work similar to Castanon, and who is limited to

4  light work with a limitation that the non-dominant left hand can be used hardly at all, maybe just to

5  carry keys.  AR 904-05.  The VE opined that such an individual could work in light machine

6  operator positions.  AR 905.  The VE then clarified that the non-dominant left hand could be used

7  only as an assist to the right hand, but that it must be used as an assist at least thirty percent of the

8  time for there to be jobs available.  AR 906.  The VE concluded that such an individual could do

9  jobs such as buffing machine tender, power press tender, tension machine operator, and the like.

10  AR 908.  The VE opined that there were approximately 45,000 such jobs in the semi-skilled and

11  unskilled categories in California and approximately ten times that many in the national economy.

12  *Id.*  The ALJ then changed the hypothetical to an individual who did not have a high school diploma

13  but instead had finished only the eighth grade.  *Id.*  The VE stated that would have no impact on the

14  number of jobs available.

15         Based upon the VE's testimony, the ALJ concluded that Castanon could do jobs that exist in

16  significant numbers in the local and national economies.   However, when the ALJ reduced his

17  decision to writing, he made two statements that Castanon now attacks: he said that Castanon has a

18  high school diploma and that he is able to communicate in English.  *See* AR 34.  Castanon asserts

19  that these statements about his education are erroneous and that the ALJ's decision therefore is not

20  supported by substantial evidence.  Pl.'s Br. at 16, ECF No. 19.

21         As an initial matter, the Court concludes that the challenged statements are supported by

22  substantial evidence in the record.  Although Castanon testified at the administrative hearing that he

23  completed only the eighth grade, *see* AR 899, Castanon represented that he completed high school

24  on his Social Security application, *see* AR 120, when he spoke to Dr. Tahami, *see* AR 590, and

25  when he spoke to Dr. Acenas, *see* AR 538.  Moreover, although Castanon testified at the

26  administrative hearing that he could not speak English, and used an interpreter throughout the

27  hearing, Castanon's Social Security application stated that he speaks and understands English.  AR

28  112.  Where evidence exists to support more than one rational interpretation, the court must defer to

the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

Even if the Court were to conclude that the challenged statements were not supported by substantial evidence in the record, the ALJ expressly included in his hypotheticals to the VE an individual who had completed high school but does not speak English, AR 905, and then later an individual who had completed only the eighth grade but does not speak English, AR 908. Accordingly, the ALJ's determination that Castanon is not disabled is supported by substantial evidence in the record.

## IV. ORDER

For the foregoing reasons, IT IS ORDERED THAT:

1.   Plaintiff's motion for summary judgment is DENIED;

2.   Defendant's motion for summary judgment is GRANTED; and

3.   The Clerk shall close the file.

Dated: March 21, 2014

_____
LUCY H. KOH
UNITED STATES DISTRICT JUDGE

5:12-CV-04487-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SJ AND GRANTING DEFENDANT'S CROSS MOTION FOR SJ

United States District Court
For the Northern District of California